UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Civil Action No. _____

AMERICAN CASUALTY CO. OF
READING, PA, an Illinois corporation,

    Plaintiff,

v.

CRISSCROSS CENTER CO., a Florida corporation;
BRICK BY BRICK BUILDS, INC., a Florida corporation;
LINCOLN CAPITAL MANAGEMENT, LLC,
a Texas limited liability company, and
U.S. SMALL BUSINESS ADMINISTRATION
c/o SUNSHINE STATE ECONOMIC DEV.
CORP., a Florida not-for-profit corporation,

    Defendants.
_____/

**COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF**

Pursuant to 28 U.S.C. § 1335, Plaintiff, AMERICAN CASUALTY CO. OF READING, PA ("Plaintiff" or "American Casualty"), by and through undersigned counsel, files this Complaint for Interpleader and Declaratory Relief ("Interpleader Action") against Defendants, CRISSCROSS CENTER CO. ("CrissCross"), BRICK BY BRICK BUILDS, INC. ("Brick"), LINCOLN CAPITAL MANAGEMENT, LLC ("Lincoln"), and U.S. SMALL BUSINESS ADMINISTRATION C/O SUNSHINE STATE ECONOMIC DEVELOPMENT CORPORATION ("SEDCO") and in support thereof, Plaintiff alleges and avers as follows:

## Nature of the Action

1. This case involves a dispute over entitlement to certain insurance claim proceeds stemming from a fire loss payable under a commercial property insurance policy bearing Policy No. 7034731721 (the "Policy") issued by Plaintiff American Casualty to the Named Insureds, Defendants, CrissCross and Brick By Brick. A copy of the Policy is attached hereto as **Exhibit 1.**

2. The Policy insures real property located at 16703 Early Riser Ave, Land O Lakes, FL 34638 (the "Property"), and provides coverage for Building, Business Personal Property, and Business Income pursuant to the terms, conditions, endorsements, exclusions, and limitations of the Policy.

3. Defendant Lincoln is designated as both a Loss Payee, Lender Loss Payee, and Mortgagee under the Policy.

4. Defendant SEDCO is designated as a Lender Loss Payee and Mortgagee under the Policy.

5. Defendants, Lincoln, CrissCross and Brick, dispute whether Lincoln is entitled to be a Loss Payee as to any Business Income or Business Personal Property proceeds payable under the Policy in connection with the fire loss insurance claim.

6. American Casualty is obligated by the Policy to make loss payment to any loss payees or mortgagees entitled to receive such payment. Should

American Casualty fail to recognize a loss payee or conversely recognize an asserted loss payee that is not actually entitled to loss payment, American Casualty may face increased exposure.

7. The dispute between the Defendants over entitlement to Business Income and Business Personal Property insurance claim proceeds payable under the Policy necessitates the filing of this interpleader action.

## The Parties

8. Plaintiff American Casualty is an Illinois corporation with its principal place of business in Illinois.

9. Defendant CrissCross is a Florida corporation, with its principal place of business located at 2729 State Road 580, Clearwater, Florida 33761.

10. Defendant Brick is a Florida corporation with its principal place of business located at 2729 State Road 580, Clearwater, Florida 33761.

11. Defendant Lincoln is a Texas limited liability company. Lincoln's members are citizens of the State of Texas.

12. Defendant SEDCO is a Florida not-for-profit corporation, with its principal place of business located at 14141 46th Street North, Suite 1206, Clearwater, Florida 33762.

## Jurisdiction and Venue

13. This interpleader action is brought under 28 U.S.C. § 1335.

14. The Court has jurisdiction over this action because at least two defendants are citizens of different states and the value of the property in controversy exceeds $500.

15. More specifically, Defendants, CrissCross, Brick, and SEDCO, are citizens of Florida and Defendant Lincoln is a citizen of Texas.

16. The amount of the insurance proceeds in controversy exceeds $75,000.

17. Venue is proper under 28 U.S.C. § 1397 because at least one defendant, CrissCross, resides in this court's judicial district.

## Statement of Interpleader Action

18. Lincoln financed the acquisition and development of Brick's real property and improvements through two loans in the combined face amount of $12,046,050 (the "Loans").

19. Particularly, in May 2021, Lincoln and Brick entered into two Loan Agreements for the acquisition of undeveloped land in Land O' Lakes, Pasco County, Florida, namely, two tracts of land that are now known as 16703 Early Riser Ave, Land O' Lakes, Florida 34638, and for the construction of a commercial building, which is now being used and operated by CrissCross.

20. On May 26, 2021, in connection with the Loan Agreements, Brick executed and delivered to Lincoln, among other things:

a.  a promissory note in the face amount of $6,692,250.00 (the "First Note");

b.  a promissory note in the face amount of $5,353,800.00 (the "Second Note");

c.  a Mortgage and Security Agreement ("First Lien Mortgage"), securing payment of the First Note and mortgaging the Property;

d.  a Mortgage and Security Agreement ("Second Lien Mortgage" and, collectively, with the First Lien Mortgage, the "Mortgages"), securing payment of the Second Note and taking a second lien position encumbering the Property;

e.  a Security Agreement ("First Lien Security Agreement"), securing payment of the First Note, and attaching as collateral therefor "all … general intangibles, accounts, … insurance proceeds payable because of loss or damage, or other property, benefits or rights arising therefrom"; and

f.  a Security Agreement ("Second Lien Security Agreement" and, collectively, with the First Lien Security Agreement, the "Security Agreements"), securing payment of the Second Note, and attaching as collateral therefor "all … general intangibles,

accounts, … insurance proceeds payable because of loss or damage, or other property, benefits or rights arising therefrom[.]"

21. Lincoln perfected its security interest created through the Security Agreements by virtue of its June 18, 2021 filing of UCC-1 Financing Statements with the Florida Secured Transaction Registry.

22. On June 16, 2023, due to Brick's default in payment of the Loans upon maturity, Lincoln filed a Verified Complaint for Foreclosure in the Circuit Court in and for Pasco County, Florida, C.A. No. 2023-CA-3726-CAAXES (the "State Court Action").

23. American Casualty issued the Policy to Named Insureds, Brick and CrissCross.

24. The Policy is effective from December 31, 2024 through December 31, 2025. See generally, **Exhibit 1**.

25. On June 10, 2025, the roof of the Building caught fire, reportedly rendering a portion of the Building unoccupiable (the "Fire Incident").

26. Following the Fire Incident, CrissCross and Brick filed a claim under the Policy.

27. The Policy provides at least three types of coverage relative to losses caused by the Fire Incident, to wit: (i) Building coverage, (ii) personal property

coverage, and (iii) time element coverage (i.e., business income coverage).[1] See **Exhibit 1**, Policy, at 58-61, Business Property Coverage Part Declarations.

28. Lincoln is listed as a Loss Payee, a Lender Loss Payee, and Mortgagee under the Policy. See **Exhibit 1**, at 63, Schedule of Loss Payees or Mortgagees Endorsement.

29. The Policy states that: "The Insurer will pay for covered loss or damage to each specified Lender Loss Payee or Mortgagee, in order of precedence, in accordance with the Lender Loss Payee's or Mortgagee's financial interest in the applicable property." See **Exhibit 1**, Policy, at 48, Section VIII.B.2.

30. The Policy further specifies as follows:

> **VIII. LOSS PAYEES AND MORTGAGEES**
>
> **A. Loss Payees**
>
> If there is loss of or damage to **insured property**, in which the **Named Insured** and any Loss Payee, whether or not named in the **Schedule of Loss Payees or Mortgagees**, have an insurable interest:
>
> **1.** the insurer will adjust losses with the **Names Insured**, and
>
> **2.** make payments jointly to the **Named Insured** and such Loss Payee, in their order of precedence, in accordance with the Loss Payee's financial interest in the applicable property.
>
> If the Insurer pays such Loss Payee, such payments will satisfy the **Named Insured's** claims against the Insurer for that Loss Payee's property. The Insurer will not pay such owners more than their financial interest in the **insured property**.

---

[1] Payment and application of the Building coverage proceeds is being governed by an Order Appointing Receiver entered in the State Court Action.

      **B. Lender Loss Payees and Mortgagees**

        **1.** As used in this Section:

          **a.** a Lender Loss Payee is any creditor who is shown on the **Schedule of Loss Payees or Mortgagees** as a Lender Loss Payee and whose interest in **insured property** is established by a written instrument including warehouse receipts, bills of lading, financing statements or security agreements;

          **b.** a Mortgagee is any mortgagee or trustee who is shown on the **Schedule of Loss Payees or Mortgagees** as a Mortgagee with respect to the **real property** for which the mortgagee or trustee is named.

        **2.** The Insurer will pay for covered loss or damage to each specified Lender Loss Payee or Mortgagee, in order of precedence, in accordance with the Lender Loss Payee's or Mortgagee's financial interest in the applicable property.

See **Exhibit 1**, Policy, at page 5 of 14.

31. Lincoln contends that it has a financial interest in the Property, as Mortgagee under the Mortgages and as Secured Party under the Security Agreements, of at least $11,309,776.66, and that it is entitled to payment of Business Income and Business Personal Property proceeds payable under the Policy.

32. While American Casualty is uncertain as to SEDCO's financial interest in the Property, SEDCO is joined because it is listed as a Lender Loss Payee and Mortgagee on the Policy to the extent SEDCO claims any interest to the Personal Property Proceeds and Business Income Proceeds. Despite request, American Casualty has not obtained a response from SEDCO as to their position with respect to their entitlement to the Personal Property Proceeds and Business Income Proceeds for the subject claim.

33. CrissCross and Brick disagree and contend that under the Policy they are entitled to direct payment from American Casualty of the Personal Property Proceeds and Business Income Proceeds to the exclusion of Lincoln.

34. Following the Fire Incident, Brick and CrissCross moved for "injunctive relief regarding claim proceeds" (the "Injunction Motion") in the State Court Action. However, Brick and CrissCross did not file an action or cause of action with respect to the disposition of the insurance proceeds and did not join American Casualty to the State Court Action.

35. In connection with the Injunction Motion, while no insurance proceeds had been dispersed by American Casualty, Brick and CrissCross sought an order prohibiting Lincoln from "impeding or diverting" the insurance claim proceeds.

36. The Court in the State Court Action denied the Injunction Motion.

37. On August 21, 2025, the Court entered an Order Appointing Receiver in the State Court Action governing the administration, payment, and application of the building claim proceeds. This foregoing Interpleader Action does not concern any building claim proceeds which are the subject of the Order Appointing Receiver in the State Court Action.

38. On August 22, 2025, Lincoln filed a Declaratory Judgment Complaint against CrissCross and Brick in the United States District Court, Middle District of

Florida, Tampa Division, CA 8:25-cv-02242 (the "Federal Court Action"), seeking a declaration "that the insurance proceeds are payable to Lincoln and/or Lincoln and Defendants, CrissCross Center Co. and Brick By Brick Builds, Inc., and that Lincoln is entitled to apply the insurance proceeds to restore the property, to the payment of costs, and to the outstanding indebtedness, in accordance with the insurance policy and the loan documents."

39. There is an actual and present dispute as to which Defendants are entitled to payment from American Casualty of the Business Personal Property Proceeds and Business Income Proceeds.

40. Plaintiff will deposit the Business Personal Property Proceeds **($189,372.61)** and Business Income Proceeds **($204,620.98)** in the total amount of **$393,993.59** into the registry of the court. A copy of the Statement of Loss is attached as **Exhibit 2**.

## Relief Sought

41. WHEREFORE, Plaintiff American Casualty respectfully requests that:

   a. Each defendant be restrained from instituting any action against Plaintiff for the recovery of the Business Personal Property Proceeds and/or Business Income Proceeds or any part thereof.

      b.    The Defendants be required to interplead and settle among themselves their rights to the Business Personal Property Proceeds and Business Income Proceeds and that Plaintiff be discharged from all liability.

      c.    Plaintiff recover costs and reasonable attorney's fees.

      d.    The Court grant any further relief as may be just and proper under the circumstances of this case.

Respectfully submitted, this <u>16th</u> day of September, 2025.

**PHELPS DUNBAR LLP**

<u>/s/ *Sarah J. Smith*</u>
Matthew L. Litsky, Esq.
Florida Bar No. 0992194
Sarah J. Smith, Esq.
Florida Bar No. 0069869
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602
Telephone: 813.472.7550
Facsimile: 813.472.7570
Email: matthew.litsky@phelps.com
Email: sarah.smith@phelps.com

*Attorneys for Plaintiff,*
*American Casualty Co. of Reading, PA*